IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SECURITIES AND EXCHANGE COMMISSION

    *Plaintiff*,

v.      No. 1:15-cv-00363-SB

ROBERT V.A. HARRA, JR., WILLIAM B. NORTH

    *Defendants*.

---

Jack Kaufman, Margaret Spillane, U.S. SECURITIES AND EXCHANGE COMMISSION, New York, New York.

    *Counsel for Plaintiff.*

Andrew S. Dupre, Daniel J. Brown, Michael P. Kelly, Steven P. Wood, MCCARTER & ENGLISH, LLP, Wilmington, Delaware; Andrew M. Lawler, Sharon D. Feldman, ANDREW M. LAWLER, P.C., New York, New York.

    *Counsel for Defendant Robert V.A. Harra.*

David E. Wilks, Andrea Brooks, R. Stokes Nolte, WILKS LAW, LLC, Wilmington, Delaware.

    *Counsel for Defendant William B. North.*

---

**MEMORANDUM OPINION**

March 28, 2022

BIBAS, *Circuit Judge*, sitting by designation.

Letting parties amend their pleadings can simplify a case. Even an amendment years after the initial complaint can clarify the issues. So a court should deny amendment only if it is pointless, if it would hurt the defendant, or if the plaintiff dragged his feet. Here, none of those factors applies. Even though the SEC wants to amend its complaint years after filing, I will let it do so.

## I. BACKGROUND

Wilmington Trust Corporation is a bank. D.I. 1 ¶ 1. It lent a lot of money for real-estate projects. D.I. 1 ¶ 2. And when the housing market collapsed in 2008, the value of its loan portfolio did too. *Id.*

But Wilmington's officers may have lied to cover that up, telling investors that the portfolio was still healthy. *Id.* ¶¶ 4–5. So in May 2015, the SEC filed this civil enforcement action against Wilmington's officers, alleging securities violations. *Id.* ¶ 1.

That same summer, federal prosecutors filed criminal charges against the officers for "substantially the same allegations." D.I. 63, at 6; *United States v. Wilmington Trust Corp.*, No. 1:15-cr-00023-RGA (D. Del.). They were convicted on all counts. D.I. 63, at 7.

But those convictions did not stand for long: on appeal, the Third Circuit reversed two of their four convictions and vacated the rest. *United States v. Harra*, 985 F.3d 196, 225 (3d Cir. 2021). It did so because there was "insufficient evidence from which a rational jury could find" that the Wilmington officers had lied. *Id.* at 204. The prosecutors then petitioned for rehearing, which the Third Circuit denied months later. D.I. 63, at 8.

Now, years after first filing its enforcement suit, the SEC wants to amend its complaint. It says that the change would "better conform [the complaint] to the Third Circuit's … decision" in the criminal case. D.I. 63, at 1.

## II. THE SEC MAY AMEND ITS COMPLAINT

Federal courts take a generous approach to pleading. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir. 1990). So I should grant leave to amend "freely … when justice so requires." Fed. R. Civ. P. 15(a)(2). But my discretion has limits. *Dole*, 921 F.2d at 486. I should deny amendment when the movant has "undu[ly] delay[ed]," the amendment would cause "undue prejudice," or it would be "futil[e]." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, these factors favor letting the SEC amend.

### A. The SEC did not unduly delay

"Delay becomes 'undue'" if it puts "an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008). For this inquiry, I "focus on the movant's reasons for not amending sooner." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001).

The SEC wants to amend its complaint to better reflect a decision from January 2021. D.I. 63, at 1. True, it did not move to amend until seven months later. D.I. 63 at 1; D.I. 64, at 14–15; *see also Harra*, 985 F.3d at 196. Still, that delay was not undue.

First, this amendment does not burden the Court. It fell within the parties' stipulated briefing schedule. After the opinion was filed in January 2021, the parties agreed to wait until the resolution of a rehearing petition. D.I. 55, at 3. Then right after that petition was denied, the parties submitted a briefing schedule for this motion. D.I. 58.

3

If anything, that plan could have saved court time. Had the government prevailed in its rehearing petition in the criminal action, the SEC might not have amended its complaint here. *See* D.I. 63, at 9–11. So that delay was reasonable. *Cf. Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (finding "unreasonable" a three-year delay when plaintiff had already amended once before); *Bjorgung*, 550 F.3d at 267 (denying amendment when plaintiff "did nothing … despite being on notice" for years).

Second, the SEC did not miss "previous opportunities" to amend. *Cureton*, 252 F.3d at 273. Courts deny amendment on that ground when plaintiffs fail to include their new theory in "numerous" amended complaints. *Lorenz*, 1 F.3d at 1414; *accord Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 654–55 (3d Cir. 1998). Yet the SEC has not amended its complaint before.

True, the SEC proposed this amendment more than six years after it first filed its complaint. *See* D.I. 1; D.I. 62. But "[t]he mere passage of time" does not stop an amendment. *Cureton*, 252 F.3d at 273. Besides, this case was inactive for much of that time. There was a three-year stay, then the parties delayed summary-judgment briefing until after the criminal appeal. *See* D.I. 20; D.I. 31.; D.I. 53. Thus, the delay in SEC's amendment was not undue.

**B. Amendment will not prejudice the officers**

Amendment will not lead to "additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273. So the officers will not suffer "substantial or undue prejudice." *Id.*

4

For one, discovery has not yet begun. D.I. 63, at 12, 15. Thus, no "additional" discovery is yet possible. *Id.*; *see also Raymo v. Civitas Media LLC*, 2020 WL 4003646, at *5–6 (M.D. Pa. July 15, 2020) (finding no prejudice when discovery was still "in its infancy").

Next, as the SEC says, the amendment merely "augment[s]" existing claims. D.I. 63, at 1. I agree. The new complaint does not "fundamentally alter[] the proceeding." *Cureton*, 252 F.3d at 274.

Consider the original complaint. The SEC first alleged that Wilmington officers lied to investors by underreporting the amount of its loans that were overdue (or soon to be). *Id.* ¶ 3. Overdue loans are an important metric for understanding the health of a bank's loan business: when a loan is overdue (or soon to be), that signals that the lender may not be paid back. D.I. 1 ¶ 1.

Now consider what has changed since then. The Third Circuit vacated the officers' convictions because it doubted that Wilmington's loans were overdue. *Harra*, 985 F.3d at 218–19. The SEC instructs lenders to report "contractually past due" loans. *Id.* at 218. But Wilmington said it had extended the loans and so presumed they did not fall under that definition. *Id.* On appeal, the Court thought Wilmington's understanding was not "unreasonable." *Id.* at 220. So Wilmington may not have lied about "overdue" loans. *Id.* at 219.

Back to the amendment. Even if the Third Circuit is right, the SEC says, Wilmington extended the due dates for those loans without adequately vetting them. D.I. 63, at 2–3. Thus, it *still* lied to investors about the quality of its loan business. *Id.* at 3.

5

That new detail does not change the action: it involves the same loans, the same SEC filings, and the same claims as the original complaint. *See* D.I. 63, at 1–2; D.I. 63-2, at 53–64. Thus, the SEC does not change its theory; instead it doubles down on it with more detail. *Cureton*, 252 F.3d at 274.

Still, the officers fight back. They say the amendment adds a "new focus" on its loan-review practices. D.I. 64 at 17. Not so. Wilmington's underwriting procedures have always been part of this case. Indeed, the original complaint alleged that the Wilmington officers tried to reduce the Bank's overdue loan burden by postponing the deadlines of some loans. *Id.* ¶¶ 35–38. The complaint also alleged that Wilmington delayed those loans without adequate vetting, thus violating SEC loan-review policies. *Id.* ¶¶ 38, 47–48, 51–55, 60, 64, 72–74; *see also* D.I. 64, at 12 (conceding that the original complaint alleged these facts). The amendment builds on that foundation.

### C. The amendment would not be futile

*1. Statute of Limitations.* The SEC wants to amend a complaint that seeks a disgorgement remedy. If brought today, that disgorgement claim would be barred by the statute of limitations (plus tolling agreement). D.I. 63, at 16; 15 U.S.C. § 78u(d)(8) (disgorgement has a five-year statute of limitations). So unless it relates back to the complaint, the amendment would be futile. *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 175 (3d Cir. 1993).

An amendment relates back if it makes a claim "ar[ising] out of the conduct, transaction, or occurrence set out" in the complaint. Fed. R. Civ. Pro. 15(c)(1)(B). That is, the amendment and the original must share "a common 'core of operative fact.'"

6

*Mayle v. Felix*, 545 U.S. 644, 659 (2005). Plus, the officers must have had "fair notice" of their "basis for liability." *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012) (internal quotation marks omitted).

The SEC clears these hurdles, so its amendment relates back. As I explained, the agency has always said that the officers lied about the quality of Wilmington's loan portfolio and its vetting process. D.I. 1 ¶¶ 4, 56. The new complaint just expands on how Wilmington leaders extended loans without vetting them. So the amendment simply "restate[s] the original claim[s] with greater particularity [and] amplif[ies] the factual circumstances surrounding the pertinent conduct." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004).

The officers say they had no notice of the facts in the amendment. D.I. 64, at 10–12. In support, they encourage us to adopt reasoning from defamation cases. *Id.* at 10. Because the amendment adds new falsehoods, they charge, the SEC tries to add new grounds for liability. *Id.* at 11–12.

But the defamation analogy is inapposite. Extending loans without vetting them is "a natural offshoot of the basic scheme to defraud investors by misrepresenting" the health of those loans. *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (internal quotation marks omitted); *accord In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 602 (D.N.J. 2001). Indeed, the amendment merely expands on past allegations; it involves the same SEC reports and the same loans that are discussed in the original complaint. Those details are the same "in time and type" as

7

those in the original complaint, so the officers had notice. *Glover*, 698 F.3d at 147 (internal quotation marks omitted).

*2. Plausibility*. Last, an amendment is futile if it does not make a plausible claim. I apply the same standard that applies to a motion to dismiss. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). The new complaint must have enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The amended complaint hits that target. All claims have already survived a motion to dismiss. D.I. 44. And the amendments would not change that outcome. *See* D.I. 64 (not disputing plausibility).

\* \* \* \* \*

The SEC's proposed amendment is timely, did not burden the court, and will not prejudice the Wilmington officers. So the agency may amend its complaint.